IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| PAIRPREP, INC. d/b/a OPTICSML, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. |
| ALTADA TECHNOLOGY SOLUTIONS, LTD., | ) ) **JURY TRIAL DEMANDED** |
| Defendant. | ) ) ) ) |

## COMPLAINT

Plaintiff Pairprep Inc., d/b/a OpticsML ("OpticsML"), by its undersigned counsel, hereby complains against Defendant Altada Technology Solutions, Ltd. ("Altada" or "Defendant"), and alleges as follows:

### INTRODUCTION AND GENERAL ALLEGATIONS

1. Plaintiff OpticsML has brought this action against Defendant Altada for injunctive relief, damages, and restitution because Altada has improperly used Plaintiff's trade secrets to develop an artificial intelligence ("AI") platform that is substantially similar to Plaintiff's.

2. Altada is a data technology company that provides AI platform solutions. It touts that its "Data Intelligence Platform integrates the first AI engine that leverages optical character recognition (OCR) and natural language processing (NLP) to analyze large volumes of structured and unstructured data."[1] But this is false. Prior to Altada's founding in 2018, Plaintiff OpticsML developed an AI platform that used optical character recognition (OCR) and natural language processing (NLP) to analyze and transform unstructured data into structured data.

---

[1] https://www.altada.com/altada-technology-solutions-opens-office-in-india/

1

3. From early 2017 to mid-2019 OpticsML worked with Rocktop Partners LLC ("Rocktop") and its related entities Ascension Data and Analytics, LLC ("Ascension") and Ursus Holdings LLC ("Ursus") (collectively, the "Rocktop Entities"), pursuant to a Master Services Agreement ("MSA"), to develop a functioning AI platform (the "OpticsML Platform") that could digest and analyze incredibly large amounts of data involved in the purchase of pools of mortgage loans.

4. The Rocktop Entities had no expertise in AI and no other machine learning software and/or technology for analyzing mortgage documents prior to the start of their relationship with OpticsML. Rather, the Rocktop Entities transact business in the arena of distressed consumer debt markets by acquiring, managing, negotiating the sale of, and overseeing the liquidation of billions of dollars of distressed loans. Thus, in late 2016 to early 2017, the Rocktop Entities approached OpticsML about applying its trade secrets and expertise in OCR, machine learning, and natural language processing (subsets of AI) to the mortgage industry.  The parties entered into the Master Services Agreement and OpticsML developed an AI platform (the "Platform") for the Rocktop Entities.

5. Over the course of its relationship with the Rocktop Entities, OpticsML shared its trade secrets with the Rocktop Entities in good faith to benefit the Rocktop Entities. The trade secrets were provided to the Rocktop Entities under the confidentiality provisions of the MSA and with the expectation that Rocktop would act in good faith to license OpticsML's intellectual property if they were to continue using it after the MSA was concluded. Yet, in August 2019, the Rocktop Entities unilaterally terminated the MSA.

6. Upon information and belief, OpticsML was the Rocktop Entities' only vendor for AI and Machine Learning services for analyzing mortgage documents. Yet, when the Rocktop Entities ended their relationship with OpticsML, the Rocktop Entities continued to tout their

"artificial intelligence and machine learning applications." And, the Rocktop Entities never disclosed that their ability to use AI-assisted structured data to analyze their mortgage portfolios had ceased, even though the Rocktop Entities had no other artificial intelligence and/or machine learning technologies for analyzing mortgage documents prior to engaging OpticsML.

7. Thereafter, the Rocktop Entities hired a new vendor, Altada, to perform substantially the same services that OpticsML had provided to the Rocktop Entities via the OpticsML Platform. Indeed, Altada announced that "Rocktop is involved in acquiring large pools of performing or non-performing residential mortgage loans. They would use us to identify collateral deficiencies and compliance issues within that portfolio." In other words, Altada was hired to replace OpticsML and build an AI platform with the same or similar functionality as the OpticsML Platform.

8. In September 2020, Altada announced it had secured €1.3 million in funding from Rocktop Partners and an Irish state agency. Then in September 2021, Altada announced Rocktop Partners led a second $11.5 million funding round.

9. In sum, the Rocktop Entities gained access to OpticsML's trade secrets over the course of their nearly two-year relationship. The Rocktop Entities unilaterally ended the relationship and then sought out Altada to replace OpticsML. Shortly after, Rocktop Partners invested millions into Altada.

10. In other words, Altada was seemingly able to develop an AI platform for the Rocktop Entities in less than a year, even though prior to working with OpticsML, the Rocktop Entities had stated no vendor had been able to develop such an AI platform at all, much less in under a year.

11. Altada was seemingly able to develop this platform at break-neck speed despite being embroiled in a contentious examinership in late 2019, Ireland's equivalent of the U.S.

Chapter 11 bankruptcy process. Indeed, the examiner estimated Altada's financial outcome as of October 29, 2019 and determined Altada was insolvent with a deficit of at least €1.96 million. By November 2019, Altada was reported to be on the brink of liquidation. During the company's insolvency proceedings, one of Altada's founders and directors stated in a sworn affidavit: "I believe that there is no product or that it is not developed to the extent that it is merchantable and/or can be sold or launched in any way" and that the examinership application was initiated "to hide and prevent any further analysis or consideration of the IP product."

12. Unless Rocktop failed to publicly disclose a cessation in its AI and ML capabilities, the timing of events does not allow for Altada to have developed the platform that now services the Rocktop Entities entirely independently of OpticsML's trade secrets. Given the lack of any disclosure by the Rocktop Entities of any such cessation, upon information and belief, Altada acquired OpticsML's trade secrets from the Rocktop Entities, which it then used to develop an AI platform with the same functionality as the OpticsML Platform for the Rocktop Entities.

## PARTIES

13. OpticsML is a Delaware corporation with its principal place of business at 1 Domidion Ct., Middletown, New Jersey.

14. Defendant Altada Technology Solutions Ltd. is an Irish limited liability company with its principal place of business at Joyce House, Barrack Square, Ballincollig Co. Cork P31D825, Ireland.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction in this matter pursuant to the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836-1839 et seq. and 28 U.S.C. §§ 1331 and 1343.

16. Venue in this District is proper under 28 U.S.C. § 1391(b)(2) and § 1391(c)(3).

Because Defendant Altada Technology Solutions Ltd. is a non-US resident, venue is proper in any district as to it.

17. This Court has personal jurisdiction over Defendant. Altada has purposefully directed its activities that form the basis for this action towards the State of Texas including, by way of example and not limitation, marketing or advertising their services to and transacting heavily with and providing services to Rocktop, which is a resident of the State of Texas. Moreover, upon information and belief, Defendant has wrongfully used and misappropriated OpticsML's work product and OpticsML trade secrets in performing due diligence and investigation into said mortgages.

18. OpticsML is currently arbitrating its claims against the Rocktop Entities in accordance with this Court's order in *Pairprep, Inc. v. Ascension Data and Analytics LLC, et. al.*, Case No. 2: 21-CV-00057-JRG (E.D. Tex.) (ECF No. 39). OpticsML requested that Altada agree to arbitrate OpticsML's claims in that arbitration, but Altada declined to do so, which necessitated the filing of this complaint.

## ADDITIONAL ALLEGATIONS

**A.     OpticsML's Unique, Proprietary Technology**

19. Prior to working with the Rocktop Entities, OpticsML had developed an AI platform for creating and managing digital educational content and thus gained expertise in applying OCR, machine learning, and natural language processing to educational materials, including the technical knowledge and resources to scale large amounts of data with a focus on PDF documents.

20. OpticsML's founders, Sean Lanning and John Brozena, gained technical experience at some of the world's largest financial institutions, such as Goldman Sachs and Deutsche Bank, Boeing, and Booz & Company (now a part of PwC). Both Mr. Lanning and Mr.

Brozena have been programmers since their early teens, and both have master's degrees from Columbia University, where they met.

21. While leading OpticsML from 2014-2019, Messrs. Lanning and Brozena developed the OpticsML trade secrets at issue in this litigation—OpticsML's proprietary platform containing source code, AI training data, algorithms, applications, user interface implementations, tools (*i.e.*, speed tagging and page grading), documentation, designs, drawings, models, architectures, protocols, formulas and algorithms, procedures, AI training data, data dictionary, and data compilations (collectively, the "OpticsML Trade Secrets").

**B.     The Rocktop Entities Gained Access to the OpticsML Trade Secrets, Which Upon Information and Belief Were Then Shared With Altada**

22. The Rocktop Entities acquire, manage, negotiate the sale of, and oversee the liquidation of billions of dollars of distressed loans.

23. In March 2017, OpticsML and Ascension executed a Master Service Agreement (the "MSA"), effective February 6, 2017, under which OpticsML was to leverage its expertise in AI (particularly OCR, machine learning, and natural language processing) and trade secrets to develop a technological platform to be used by the Rocktop Entities to analyze structured and unstructured data in mortgage loan documents.

24. The MSA provided that OpticsML exclusively owned all intellectual property developed in whole or in part by OpticsML in providing the services to the Rocktop Entities, including the OpticsML Trade Secrets (expressly defined as "Work Product").

25. For nearly two years, from 2017 to 2019, OpticsML worked on creating and refining the OpticsML Platform to meet the Rocktop Entities' increasingly demanding specifications.

26. Pursuant to the MSA, OpticsML disclosed the OpticsML Trade Secrets to the Rocktop Entities in good faith throughout 2017, 2018, and into 2019, which enabled OpticsML's

servers to use machine learning and natural language processing to extract information from mortgage documents supplied by the Rocktop Entities. The Rocktop Entities marketed to investors and publicly touted on its website that it had created a "due diligence and analytics platform" centered around machine learning and natural language processing to conduct its business:

> Rocktop and its affiliates have developed artificial intelligence and machine learning applications and a proprietary database of curative outcomes on over 100,000 legal related title, compliance, and collateral defects to optimize our due diligence, underwriting and pricing capabilities. This platform allows Rocktop to price loan pools more precisely by quickly identifying optimal curative paths that enable us to estimate the time, cost, and complexity involved in resolving essentially any title, collateral or compliance issue. Rocktop's technical platform and analytical methodologies provide the scale and systems sophistication to process high volumes of loans quickly and accurately.[2]

27.     The Rocktop Entities immediately saw the immense value in OpticsML's technology for use in the OpticsML Platform. Just weeks into the development, Brett Benson, President of Ascension, stated in an email, "[w]e'd like to discuss expanding the partnership with you guys as we've mentioned in the previous conversations." And, throughout the process, the Rocktop Entities expressed satisfaction with OpticsML's development of the OpticsML Platform, including by showing OpticsML internal correspondence between the Rocktop Entities expressing enthusiasm for the OpticsML Platform.

28.     The OpticsML Platform provided the Rocktop Entities with a clearly valuable competitive advantage, particularly because no other vendor the Rocktop Entities met with had expressed the ability to meet their needs. The OpticsML Platform performs incredibly complex decision-making using the OpticsML Trade Secrets. For example, nearly all mortgage documents to which the OpticsML Trade Secrets were applied were large and image-based. Enabling and teaching a machine to read pixels on a page such that it can make out words, understand the context

---

[2] https://web.archive.org/web/20211014093621/https://rocktoppartners.com/. *See* Exhibit B.

of those words, and then find relevant information and details is extraordinarily difficult. The vast majority of the documents were completely non-uniform as they came from myriad different servicers, title companies, and banks. The Platform has been able to scale to a vast amount of highly differentiated data very quickly.

29. Rocktop sent OpticsML tens of millions of pages of mortgage documents (contained in large-scale files of mortgage loans from the largest financial institutions in the world) for OpticsML to process.

30. The OpticsML Platform was used across the Rocktop Entities' organizations for revenue-generating purposes. For example, the OpticsML Platform was used by Rocktop to analyze loan documents during the due diligence on potential deals. Furthermore, the OpticsML Platform was used to deeply analyze loan documents on mortgages that were already in the Rocktop Entities' portfolio to find and resolve issues within them.

31. An image of the Platform shows an early version of how OpticsML's software, containing the OpticsML Trade Secrets, was intended to be used by the Rocktop Entities for mortgage documents. As the image shows, mortgage documents were fed into the OpticsML Platform. The OpticsML Platform then analyzed the documents and produced data that was reviewed by the Rocktop Entities. The Rocktop Entities then used the data for their business purposes and made corrections and validations of the data to improve the OpticsML Platform.



32.     OpticsML led meetings with the Rocktop Entities twice per week, providing all information they requested to continue to develop and refine the OpticsML Platform.

33.     From 2017 through the beginning of 2019, the Rocktop Entities' employees and consultants, ranging from technical employees to upper management, continued their twice-weekly meetings to dive into the details of the technology that OpticsML was creating in the OpticsML Platform. OpticsML understood that it was operating pursuant to a fair, mutually beneficial, and confidential contractual partnership. As a result, OpticsML provided the Rocktop Entities' technical employees access to technical details, progress, failures, and positive results of the OpticsML Platform.

34.     In short, on a continuous basis for nearly two years, OpticsML provided all of the information that the Rocktop Entities needed to utilize the OpticsML Trade Secrets and deploy the OpticsML Platform—the same trade secrets that Altada would eventually use to develop its AI platform.

35.     Ultimately, in August 2019, the Rocktop Entities unilaterally terminated the MSA

9

and ceased working with OpticsML.

### C. Altada Obtained the OpticsML Trade Secrets and Used Them to Develop Competing Products

36. Altada was founded in 2018, one year after OpticsML had begun developing the OpticsML Platform for the Rocktop Entities.

37. In September 2019, Altada filed an application for examinership, an Irish Companies Act insolvency procedure, similar to the U.S. Chapter 11 Bankruptcy procedure.

38. As part of the examinership proceedings, the examiner that Altada petitioned for estimated the financial outcome of Altada as of late October 2019. The examiner estimated that Altada would have a deficit of € 1.96 million on a going concern basis and a deficit of € 2.3 million on a winding up basis, far eclipsing the value of any of their assets.

39. In November 2019, Altada was reported to be insolvent and on the brink of being liquidated.

40. Altada was in such dire straits that one of its founders stated in a sworn affidavit: "I believe that there is no product or that it is not developed to the extent that it is merchantable and/or can be sold or launched in any way" and that the examinership application was initiated "to hide and prevent any further analysis or consideration of the IP product."

41. Prior to the examinership, Altada was forced to drastically decrease its workforce by two thirds. And two of its former employees had lodged claims with the Irish Workplace Relations Commission for over € 250,000.

42. After the Rocktop Entities ceased working with OpticsML, they sought out Altada to perform the same services previously performed by OpticsML. Furthermore, upon information and belief, the Rocktop Entities continued to use the OpticsML Platform and OpticsML Trade Secrets even though they themselves terminated the MSA.

43. Even though the Rocktop Entities had no experience or expertise in machine learning or artificial intelligence on mortgage documents prior to working with OpticsML, the Rocktop Entities continued to publicly claim they "create and use state-of-the-art machine learning and AI-powered applications."

44. Indeed, Rocktop Partners' Chief Technology Officer, Nandu Majeti did not become certified in machine learning until July 2019—after he had spent nearly two years working closely with OpticsML.

45. In a 2019 survey of ML and AI professionals, over 80% of respondents stated it took more than 6 months to deploy their machine learning and artificial intelligence models into production, with 64.4% stating it took between 7 and 18 months.

46. Despite this, in September 2020, Altada announced that Rocktop Partners, its client, had invested €1.3 million in Altada—roughly one year after the Rocktop Entities ceased working with OpticsML, and one year after Altada began its insolvency proceedings and one of its own founders stated it had "no product or that it had not developed to the extent that it is merchantable and/or can be sold or launched in any way."

47. In September 2021, Altada announced Rocktop Partners led another major investing round of $11.5 million.

48. Altada claims the key to its success is "deep client relationships." Upon information and belief, Altada used its "deep client relationship" with the Rocktop Entities to gain access to the OpticsML Trade Secrets.

49. Altada knew or had reason to know that the source of the OpticsML Trade Secrets was another third-party vendor, because (i) Altada knew or had reason to know that the Rocktop Entities did not have the expertise to develop the trade secrets and intellectual property itself, and (ii) the Rocktop Entities also could not have demonstrated to Altada that it had a valid license to

such trade secrets and intellectual property, because no such license existed.

50. Upon information and belief, Altada knowingly used the OpticsML Trade Secrets to develop an AI platform for the Rocktop Entities. Doing so allowed Altada to significantly reduce the time and expense necessary to develop a working AI platform, as well as minimize the risk of failure. Altada could avoid spending time and resources on methods or processes that OpticsML had previously attempted and found unsuccessful, as well as ensure it was able to identify successful methods and processes. Moreover, Altada could utilize data structured or formatted by OpticsML to train its ML and AI models.

51. Upon information and belief, Altada was able to develop its AI platform significantly faster than a majority of ML and AI professionals because it knowingly used the OpticsML Trade Secrets, rather than engage in a clean and independent development process.

52. Altada claims to be a leader in non-performing loans, the asset class the Rocktop Entities specialize in. It touts its ability to "quickly and accurately identify pre-indicative pricing, and therefore revenue potential, across large pools of residential mortgage loans whose valuation depends upon the presence and ability to cure title defects, compliance issues, or other collateral deficiencies."

53. Moreover, Altada boasts that its AI platform can "help[] clients to unlock value from large, unstructured data sources – a sprawling mortgage loan file, for example – by extracting, wrangling, and analysing the components of multiple documents," and bring about "operational and cost efficiencies."

54. In recent promotional videos on its products, Altada claims its products are able to catalogue, extract, and understand key data on loan portfolios," resulting in processing documents faster than manual data entry methods. It claims to do so by using a procedure whereby the documents are ingested, "OCR is used to read the documents, NLP and ML are then applied

to understand the data." Afterward, end users verify the results, and "the data is shared in easy to use formats, so you can visualized the most valuable information, and make the best informed investment decisions." This process is similar to the process for analyzing mortgage loan documents using the OpticsML Platform. In just one year, Altada claims it developed an AI platform to analyze large volumes of unstructured and structured data that is the first of its kind. In other words, Altada claims that in just one year it was able to develop something no other vendor has ever developed before, even though the examiner's proposals to rescue Altada from insolvency had only been approved November 2019. Further, it was purportedly able to do so even though in late 2019 one of its own founders and directors stated in a sworn affidavit that "there is no product or that it is not developed to the extent that it is merchantable and/or can be sold or launched in any way."

55. The development of the AI engine for analysis of mortgage documents allowed Altada to go from being insolvent, with an estimated deficit of at least € 1.96 million, far exceeding any estimated value of its assets, to aiming to raise between $50 million - $100 million in funding in just over two years.

56. Upon information and belief, Altada was only able to develop such an AI platform and achieve such a meteoric change in its valuation by using the OpticsML Trade Secrets, rather than developing an AI platform independently.

## FIRST CAUSE OF ACTION
**Trade Secret Misappropriation Under the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836-1839 et seq.**

57. OpticsML fully incorporates all of the above paragraphs as fully set forth herein.

58. OpticsML owns and possesses certain trade secret, confidential, and proprietary information that is protected by the DTSA. Such trade secrets were used in interstate commerce.

59. The OpticsML Trade Secrets include the proprietary platform containing

applications, source code, tools, documentation, designs, drawings, models, architectures, protocols, formulas and algorithms, procedures, data dictionary, and its data compilations developed by its founders, Messrs. Lanning and Brozena, while leading OpticsML from 2014-2019.

60. OpticsML took reasonable steps to protect and maintain the secrecy of its trade secrets and confidential information, including corporate policies. For example, OpticsML had a practice of requiring all clients, potential clients, and independent contractors sign agreements with stringent confidentiality provisions prior to disclosure of any trade secrets and confidential information.

61. Indeed, section 7 of the MSA states:

> Each Party acknowledges and agrees that all confidential information regarding the other Party, its business and its customers ("Confidential Information") shall not be disclosed to any third party without prior written consent of the other Party hereto. […] Each party shall use any Confidential Information of the other only for the purpose of performing its obligations under this Agreement and shall not make use of Confidential Information for any other purpose. Each Party shall ensure that only those of its employees, permitted agents or permitted subcontractors who need to know Confidential Information to perform its obligations hereunder will have access to such Confidential Information, and that such persons agree to be bound by the provisions of this Section.

62. The OpticsML Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

63. As described in greater detail above, the OpticsML Trade Secrets, as implemented through the OpticsML Platform, allowed the Rocktop Entities to perform due diligence on mortgage loans more accurately and quickly than methods without AI. This gave the Rocktop Entities a significant competitive advantage in purchasing mortgage loan portfolios. With the Platform, the Rocktop Entities were able to analyze greater numbers of loans and more accurately

assess the risk of and price such loans. Further, the OpticsML Platform was able to significantly reduce loan processing costs for the Rocktop Entities.

64. Moreover, Altada was able to secure over $13 million dollars in a funding round led by the Rocktop Entities by offering substantially similar services to those offered by OpticsML via the OpticsML Platform.

65. In violation of OpticsML's rights under the DTSA, 18 U.S.C. § 1836, Defendant misappropriated OpticsML's trade secret, confidential, and proprietary information in the improper and unlawful manner by acquiring the OpticsML Trade Secrets without Plaintiff's consent or authorization.

66. Altada knew or had reason to know that the source of the OpticsML Trade Secrets was another third-party vendor, because (i) Altada knew or had reason to know that the Rocktop Entities did not have the expertise to develop the trade secrets and intellectual property itself, and (ii) the Rocktop Entities also could not have demonstrated to Altada that it had a valid license to such trade secrets and intellectual property, because no such license existed.

67. Further, Altada knew or had reason to know that the Rocktop Entities acquired the OpticsML Trade Secrets under circumstances giving rise to a duty for the Rocktop Entities to maintain the secrecy of such trade secrets.

68. Defendant's misappropriation of the OpticsML Trade Secrets was intentional, knowing, willful, malicious, fraudulent, and oppressive.

69. As described in greater detail above, upon information and belief, Defendant acquired the OpticsML Trade Secrets from the Rocktop Entities over the course of their development of an AI platform with the same functionality as the OpticsML Platform for the Rocktop Entities. Upon information and belief, Defendant then used these OpticsML Trade Secrets to develop an AI platform that competes with the OpticsML Platform.

70. As the direct and proximate result of Defendant's conduct, OpticsML has suffered and, if Defendant's conduct is not stopped, will continue to suffer severe competitive harm, irreparable injury, and significant damages in an amount to be proven in this proceeding pursuant to 18 U.S.C. § 1836(b)(3)(B).

71. Pursuant to 18 U.S.C. § 1836(b)(3)(A), because OpticsML's remedy at law is inadequate, OpticsML seeks, in addition to damages, a permanent injunctive relief to recover and protect its trade secrets, confidential and proprietary information, and to protect other legitimate business interests. OpticsML's business, providing AI solutions for analysis of documents, operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

72. OpticsML is entitled to an award of exemplary damages and attorneys' fees.

## SECOND CAUSE OF ACTION
**Trade Secret Misappropriation Under the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code §§ 134A.001 *et. seq.***

73. OpticsML fully incorporates all of the above paragraphs as fully set forth herein.

74. OpticsML owns and possesses certain trade secret, confidential, and proprietary information that is protected by the TUTSA. Such information includes the exact technology and source code utilized by the OpticsML Platform.

75. The OpticsML Trade Secrets include proprietary and industry-leading platform containing applications, source code, tools, documentation, designs, drawings, models, architectures, protocols, formulas and algorithms, procedures, data dictionary, and its data compilations developed by its founders, Messrs. Lanning and Brozena, while leading OpticsML from 2014-2019.

76. OpticsML took reasonable steps to protect and maintain the secrecy of its trade secrets and confidential information, including corporate policies. For example, OpticsML had a practice of requiring all clients, potential clients, and independent contractors sign agreements with

stringent confidentiality provisions prior to disclosure of any trade secrets and confidential information.

    77.    Indeed, section 7 of the MSA states:

> Each Party acknowledges and agrees that all confidential information regarding the other Party, its business and its customers ("Confidential Information") shall not be disclosed to any third party without prior written consent of the other Party hereto. […] Each party shall use any Confidential Information of the other only for the purpose of performing its obligations under this Agreement and shall not make use of Confidential Information for any other purpose. Each Party shall ensure that only those of its employees, permitted agents or permitted subcontractors who need to know Confidential Information to perform its obligations hereunder will have access to such Confidential Information, and that such persons agree to be bound by the provisions of this Section.

    78.    The OpticsML Trade Secrets derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who could obtain economic value from the disclosure or use of the information.

    79.    As described in greater detail above, the OpticsML Trade Secrets, as implemented through the OpticsML Platform, allowed the Rocktop Entities to perform due diligence on mortgage loans more accurately and quickly than methods without AI. This gave the Rocktop Entities a significant competitive advantage in purchasing mortgage loan portfolios. With the Platform, the Rocktop Entities were able to analyze greater numbers of loans and more accurately assess the risk of and price such loans. Further, the OpticsML Platform was able to significantly reduce loan processing costs for the Rocktop Entities.

    80.    Moreover, Altada was able to secure over $13 million dollars in a funding round led by the Rocktop Entities by offering substantially similar services to those offered by OpticsML via the OpticsML Platform.

    81.    In violation of OpticsML's rights under the TUTSA, Tex. Civ. Prac. & Rem. Code § 134A.002, Defendant misappropriated OpticsML's trade secret, confidential, and proprietary

information in the improper and unlawful manner by acquiring the OpticsML Trade Secrets without Plaintiff's consent or authorization.

82. Altada knew or had reason to know that the source of the OpticsML Trade Secrets was another third-party vendor, because (i) Altada knew or had reason to know that the Rocktop Entities did not have the expertise to develop the trade secrets and intellectual property itself, and (ii) the Rocktop Entities also could not have demonstrated to Altada that it had a valid license to such trade secrets and intellectual property, because no such license existed.

83. Further, Altada knew or had reason to know that the Rocktop Entities acquired the OpticsML Trade Secrets under circumstances giving rise to a duty for the Rocktop Entities to maintain the secrecy of such trade secrets.

84. Defendant's misappropriation of the OpticsML Trade Secrets was intentional, knowing, willful, malicious, fraudulent, and oppressive.

85. As described in greater detail above, upon information and belief, Defendant acquired the OpticsML Trade Secrets from the Rocktop Entities over the course of their development of an AI platform with the same functionality as the OpticsML Platform for the Rocktop EntitiesUpon information and belief, Defendant then used these OpticsML Trade Secrets to develop an AI platform that competes with the OpticsML Platform.

86. As the direct and proximate result of Defendant's conduct, OpticsML has suffered and, if Defendant's conduct is not stopped, will continue to suffer severe competitive harm, irreparable injury, and significant damages in an amount to be proven in this proceeding pursuant to Tex. Civ. Prac. & Rem. Code § 134A.004.

87. Pursuant to Tex. Civ. Prac. & Rem. Code § 134A.003, because OpticsML's remedy at law is inadequate, OpticsML seeks, in addition to damages, and permanent injunctive relief to recover and protect its trade secrets, confidential and proprietary information and to

protect other legitimate business interests. OpticsML's business, providing AI solutions for analysis of documents, operates in a competitive market and will continue suffering irreparable harm absent injunctive relief.

88. OpticsML is entitled to an award of exemplary damages and attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, OpticsML prays for judgment against Defendant, jointly and severally, as follows:

1. Compensatory damages, plus interest and prejudgment interest in an amount to be determined at trial;

2. Other economic and consequential damages in an amount to be determined upon final hearing;

3. Injunctive relief to prevent use by Defendant of any trade secrets belonging to OpticsML in any way;

4. Restitution of all profits made by Defendant, in the past and future, as a result of engaging in wrongful conduct that has or will damage OpticsML;

5. Attorneys' fees and costs;

6. For such other and further relief as the Panel deems just and proper.

Dated: July 7, 2022            Respectfully submitted,

/s/ Melissa Smith
Melissa Smith

GILLAM & SMITH
303 S. Washington Ave.
Marshall, Texas  75670
Tel: 903.934.8450
Melissa@gillamsmithlaw.com

Asim M. Bhansali
Texas State Bar No. 90001290
Kate E. Lazarus (*pro hac* forthcoming)
Nicholas A. Roethlisberger (*pro hac* forthcoming)
Scott W. Taylor (*pro hac* forthcoming)
KWUN BHANSALI LAZARUS LLP
555 Montgomery St., Suite 750
San Francisco, CA 94111
Tel: (415) 630-2350
abhansali@kblfirm.com
klazarus@kblfirm.com
nroethlisberger@kblfirm.com
staylor@kblfirm.com


***Attorneys for Plaintiff***
***Pairprep Inc., d/b/a OpticsML***